HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAM PHAM,

                Plaintiff,

    v.

FERNDALE SCHOOL DISTRICT;
MARK DEEBACH, in his former
capacity as Interim Superintendent
of the Ferndale School District;
JOHN FAIRBAIRN, in his former
capacity as Executive Director of
Human Resources of the Ferndale
School District; JAMIE
PLENKOVICH, in his former
capacity as Director of Maintenance
and Transportation of the Ferndale
School District; KEVIN
ERICKSON; MELINDA COOL, in
their current or former capacities as
members of the Ferndale School
Board of Directors,

                Defendants.

Case No.  2:24-cv-01962-RAJ

ORDER ON DEFENDANTS'
MOTION TO DISMISS

ORDER – 1

## I.    INTRODUCTION

THIS MATTER comes before the Court on the Motion to Dismiss (the "Motion," Dkt. # 27) filed by Ferndale School District (the "District") and certain current or former employees of the District acting in their official capacities (together with the District, the "Defendants").  Plaintiff Dam Pham filed a response in opposition to the Motion (the "Response," Dkt. # 29).  Defendants filed a reply in support of the Motion (the "Reply," Dkt. # 30). For the reasons set forth below, the Court **GRANTS** the Motion and **DISMISSES** this case without prejudice.

## II.    BACKGROUND

Plaintiff Dam Pham was employed as a school bus driver for the District from 2008 through 2021.  Dkt. # 1 ¶¶ 5.1, 5.13; Dkt. # 27 at 2.  In August of 2021, in the wake of the COVID-19 pandemic, then-Governor Inslee issued Proclamation 21-14 and Proclamation 21-14.1 (collectively "Proclamation"),[1] the latter of which prohibited any "Worker from engaging in work for the operator of an Educational Setting after October 18, 2021" unless the Worker was "fully vaccinated against COVID-19."  Dkt. # 26 at 18. The Proclamation also prohibited an "operator of any Education Setting from permitting a Worker to engage in work for the operator after October 18, 2021, if the Worker has not been fully vaccinated against COVID-19."  *Id.*  As an "operator of an Education Setting," the District was subject to the Proclamation, and Plaintiff qualified as a "Worker" in his capacity as a bus driver for the District.  Dkt. # 27 at 3.

Plaintiff requested a religious accommodation exemption from the District's vaccination requirement on September 10, 2021.  Dkt. # 26 at 4–5.  The District approved

---

[1]    Because all iterations of the Proclamation are either attached to Plaintiff's complaint or otherwise publicly available and integral to the complaint, the Court will take judicial notice of the Proclamation.  *See* Dkt. # 1-3 at 65 (Proclamation 21-14, attached to complaint as exhibit by Plaintiff); Dkt. # 26 at 18–19 (*Loudermill* notice and follow-up termination recommendation citing Proclamation 21-14.1, attached to complaint as exhibit by Plaintiff), 20 (Plaintiff's response to District's termination recommendation notice, acknowledging Proclamation 21-14.1 as basis for termination decision; attached to complaint as exhibit by Plaintiff).

Plaintiff's request on September 16, 2021, and informed Plaintiff that potential additional safety mitigation strategies may be required of unvaccinated employees. *Id.* at 6. The District provided Plaintiff with a follow-up letter on October 13, 2021 outlining additional detail regarding these strategies, including the requirement to "complete a rapid COVID test twice weekly" and "wear an approved face covering at all times when . . . not alone in a room." *Id.* at 7. The District warned exempted employees that "[f]ailure to report for testing" and to adhere to the requirement to wear a mask would "result in the revocation" of the accommodation. *Id.* The District emphasized that all accommodations were "safety measures linked to [the] exemption and required for continued employment" in the District. *Id.*

On October 21 and October 25, 2021, Plaintiff informed the District's administrators of his refusal to abide by the rapid testing requirements for unvaccinated employees. Dkt. # 1 ¶¶ 5.9–5.10; Dkt. # 26 at 18. On October 29, 2021, the Interim Superintendent of the District provided Plaintiff with a letter with the subject "*Loudermill* Notice—Recommendation for Termination" via e-mail and certified mail. *Id.* at 17–18. The letter provided that the recommendation for termination was based on Plaintiff's "refusal to comply with the additional safety measures required for unvaccinated staff." *Id.* at 18. Plaintiff declined to participate in a *Loudermill* hearing with union representation, instead relying on the written objections previously presented to the District in his October 25 letter. Dkt. # 1 ¶ 5.11; Dkt. # 26 at 19–20.

The Interim Superintendent of the District subsequently advised Plaintiff that he would be recommending Plaintiff's termination at the District's next regular Board meeting, adding that Plaintiff's "pattern of disregard for staff and student safety in relation to COVID-19." Dkt. # 26 at 19. Specifically, the Interim Superintendent noted that Plaintiff had "received a letter of reprimand on November 5, 2020 and continued to

ORDER – 3

work while symptomatic and COVID positive in October of 2021 in conflict with the District's COVID-safety measures." *Id.* Accordingly, as a result of Plaintiff's "repeated noncompliance with the District's COVID-safety measures and refusal to abide by the additional safety measures for unvaccinated staff," the District concluded that he could not continue to "safely perform" his job functions. *Id.* The District's Board of Directors accepted the termination recommendation on November 30, 2021. *Id.* at 22. Plaintiff was advised of his right to appeal the Board's decision, and of his rights under the District's collective bargaining agreement. *Id.*

Plaintiff commenced this action on November 27, 2024, alleging various causes of action against Defendants arising under federal and state law. Dkt. # 1. Defendants filed an answer to Plaintiff's complaint and asserted fifteen affirmative defenses. Dkt. # 21. Defendants also filed a motion for default, which the Clerk denied on February 28, 2025. Dkt. ## 22–25. This Motion followed. Dkt. ## 27–30. A jury trial is set for April 13, 2026.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), courts may dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must point to factual allegations in the complaint that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing a motion to dismiss, courts assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However, it "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

ORDER – 4

Under Rule 12(c), after the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. Proc. 12(c). Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle plaintiff to a legal remedy. *Id.*

## IV.   DISCUSSION

### A.   Count I: Violation of Right to Privacy

Plaintiff's first cause of action is labelled "Violation of Right to Privacy." Dkt. # 1 ¶ 7.1. The claim is predicated on Plaintiff's allegation that Defendants violated his right to privacy under the Fourth Amendment and Article 1, Section 7 of the Washington State Constitution by (1) "demanding an unproven injectable into his bloodstream" and (2) "demanding proof of specific private medical information as a condition of employment." *Id.* The Court takes each of these claims in turn.

Plaintiff's suggestion that the District violated his privacy by "demanding" intrusion into his "bloodstream" with an "unproven injectable" is unfounded, given that he did not receive the COVID-19 vaccination. Plaintiff responds that he need not plead "forcible injection" in order to state a claim for violation of privacy, arguing that the "invasive medical procedures" to which he was subjected as a condition for his exemption from the vaccination—namely, the "twice-weekly rapid COVID-19 tests involving nasal swabs" required by the District for all unvaccinated employees— constituted searches and seizures under the Fourth Amendment. Dkt. # 29 at 6–7. In support of this proposition, Plaintiff relies on to *Skinner v. Railway Labor Executives'*

ORDER – 5

*Ass'n*, 489 U.S. 602, 616–17 (1989).  *Id.*  However, as Defendants note, *Skinner* undermines Plaintiff's position.  While the Supreme Court in that case did apply the Fourth Amendment to railroad employee drug and alcohol testing authorized by federal regulations, it ultimately concluded that the mandated testing was reasonable because the compelling government interest in keeping the travelling public safe outweighed the employees' privacy concerns.  Dkt. # 30 at 3 (citing *Skinner*, 489 U.S. at 628).

The other cases cited by Plaintiff are inapposite, as they involve the collection of DNA or evidence without the consent or knowledge of the patient or subject (or without a warrant, in the post-arrest context).  *See* Dkt. # 29 at 7 (citing *Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001); *Maryland v. King*, 569 U.S. 435, 446 (2013); *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269 (9th Cir. 1998)).  While Plaintiff argues that "[c]onsent extracted under threat of termination cannot be deemed voluntary," Dkt. # 29 at 7, he offers no authority in support of that proposition.[2]

The second basis alleged by Plaintiff in support of his first cause of action is a claimed "informational privacy" injury—specifically, he alleges that the District "demand[ed] proof of specific private medical information as a condition of employment."  Dkt. # 1 ¶ 7.1.  In the Ninth Circuit, "informational privacy" is a "conditional right which may be infringed upon a showing of proper governmental interest."  *Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014) (citation omitted).  Courts assessing claims of informational privacy violations apply a balancing test, weighing: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent

---

[2]    Plaintiff cites to a case called *Bainter v. City of Portland*, 591 F.3d 1217, 1221 (9th Cir. 2010).  The Court's research did not yield any case by this name and caption, and the case filed at this citation number in the Third Series of the Federal Reporter does not stand for the proposition suggested by Plaintiff.

ORDER – 6

unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *A.C. ex rel. Park v. Cortez*, 34 F.4th 783, 787 (9th Cir. 2022).

Plaintiff's Response makes clear that this claim refers to the "disclosure of private medical information such as vaccination or testing status." Dkt. # 29 at 7. However, as several courts in this District have recognized, an individual's COVID-19 vaccination is not "sensitive or intimate" under the *Cortez* standard. *See Brock v. City of Bellingham*, No. C24-850, 2025 WL 254725, at *11 (W.D. Wash. Jan. 21, 2025) (citing *Schmidt v. City of Pasadena*, 2024 WL 1640913, at *14 (C.D. Cal. Mar. 21, 2024) and *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999)); *Martinez v. Eastside Fire & Rescue*, No. 2:24-CV-01706-TL, 2025 WL 1654649, at *12 (W.D. Wash. June 10, 2025).[3] As was the case in *Brock*, the "only claimed injury that is supported by [Plaintiff's] allegations is the loss of employment" with the District, "which is attributable not to any violation of [his] 'informational privacy' rights (*i.e.*, disclosure of [his] vaccination status), but to [his] refusal to receive the vaccine" or otherwise abide by the conditions applicable to all nonvaccinated employees. *Brock*, 2025 WL 254725, at *11. Because Plaintiff fails to state an actionable claim of violation of the right to privacy, his first cause of action is dismissed.

**B.    Count II: Violation of Right to Liberty**

Plaintiff's second cause of action is labelled "Violation of Right to Liberty." Dkt. # 1 ¶ 7.2.    He asserts that, "[b]y violating Plaintiff's right to refuse unwanted medical treatment and creating coercive conditions (job loss, financial harm) for the injection of

---

[3]    Plaintiff's assertion that application of the balancing test is premature at the motion to dismiss stage is incorrect.  Courts can, and do, apply the *Cortez* test at the motion to dismiss stage to weigh claims of "informational privacy" rights against proper governmental interests, and indeed have dismissed privacy claims regarding COVID-19 vaccination status at this stage of litigation. *See, e.g.*, *Brock*, 2025 WL 254725, at *11; *Martinez*, 2025 WL 1654649, at *12.

ORDER – 7

vaccines, Defendants' actions represented a substantial interference with Plaintiff's liberty." *Id.*  Regardless of how Plaintiff tries to frame his claimed liberty interest, however, "the asserted liberty interest in this case is the right to public employment without receiving the vaccine" (or abiding by masking or testing requirements in the alternative), *not* the "right to refuse unwanted medical treatment." *Brock*, 2025 WL 254725, at *9 n.9.  And there is ultimately no fundamental liberty interest in continued government employment.  *See id.* at *9 (collecting cases).  Accordingly, rational basis review applies.

The policy implemented by the District easily satisfies rational basis review. Indeed, several courts have concluded that "governments and employers alike have a rational basis . . . for requiring unvaccinated employees to take additional safety precautions, such as wearing masks or submitting to weekly COVID-19 tests." *Sweeney v. Univ. of Colorado Hosp. Auth.*, No. 23-CV-02451-NYW-MDB, 2024 WL 3713835, at *12 (D. Colo. July 12, 2024), *aff'd sub nom. Timken v. S. Denver Cardiology Assocs., P.C.*, 155 F.4th 1227 (10th Cir. 2025), and *aff'd sub nom. Timken v. S. Denver Cardiology Assocs., P.C.*, 155 F.4th 1227 (10th Cir. 2025) (citing *Schmidt v. City of Pasadena*, No. 2:21-cv-08769-JAK-JC, 2023 WL 4291440, at *11 (C.D. Cal. Mar. 8, 2023)); *see also Moriarty v. Port of Seattle*, No. 2:23-CV-01209-TL, 2024 WL 4290279, at *6 (W.D. Wash. Sept. 25, 2024) (collecting cases analyzing mask mandates under rational basis review).  Plaintiff also argues that "publicly available studies and admissions by federal officials" indicate that "masking was of limited efficacy in preventing transmission of COVID-19." Dkt. # 29 at 9.  The Due Process Clause, however, "does not require scientific consensus to justify government action." *Schmidt*, 2023 WL 4291440, at *11 (quoting *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707 (C.D. Cal. 2022)).  Because the District's vaccination policy and

exemption conditions pass rational basis review, Plaintiff's second cause of action is dismissed.

## C.     Count III: Violation of Informed Consent

Plaintiff's third cause of action asserts violations of state and federal informed consent laws on the basis of Defendants' purported "fail[ure] to inform Plaintiff of possible risks, all material facts relating to the treatment, the recognized possible alternative forms of treatment, and the Right and Option to refuse treatment, including the right to non-treatment." Dkt. # 1 ¶ 7.3. The Court examines Plaintiff's federal and state law informed consent claims separately.

### i.   Federal Law Claims

The two federal statutory bases for this cause of action Plaintiff offers are: (1) the Emergency Use Authorization Act, 21 U.S.C. § 360bbb-3 ("EUA"); and (2) the Public Readiness and Emergency Preparedness Act 42 U.S.C. § 247d-6d *et seq.* ("PREP Act"). Dkt. # 1 ¶ 7.3. The EUA, however, "does not create rights privately enforceable under § 1983 (or otherwise)." *See Brock*, 2025 WL 254725, at *6 (collecting cases concluding that 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(II) does not create a private right of action under § 1983). Similarly, the PREP Act does not "create rights Plaintiff[] might enforce under § 1983." *Id.* at *7. Instead, it permits lawsuits governed by "narrowly circumscribed procedures" involving "death or serious physical injury." *Id.* The PREP Act is thus both substantively and procedurally inapplicable to this case. On this basis alone, Plaintiff's federal informed consent claims fail.

### ii.  State Law Claims

Plaintiff separately identifies the following state law statutory bases underpinning his third cause of action: RCW 7.70.050, RCW 7.70.030 & RCW 7.70.040. Dkt. # 1 ¶ 7.3. Defendants' only argument for dismissal of these state law claims is Plaintiff's

ORDER – 9

failure to provide strict statutory pre-suit notice pursuant to RCW 4.92 *et seq.*  Dkt. # 27 at 9.  Pursuant to RCW 4.92.100, a plaintiff is required to file a claim with the office of risk management before filing a tort action against the state or state employees.  RCW 4.92.100.  The claim form must provide specific information about the claimant, the conduct alleged, the injury or damage, and the persons involved, and is subject to specific procedural requirements. *Id.*  Plaintiff counters that school districts are municipal corporations and political subdivisions of the state and are therefore subject to the pre-suit notice requirements of RCW 4.96 *et seq.* (which governs lawsuits against local governmental entities), not RCW 4.92 *et seq.* (which governs state agencies).  Dkt. # 29 at 5 (citations omitted).  While Defendants in the Reply acknowledge certain state law provisions contradicting their position, they nevertheless maintain that the District is "not a local government entity," and therefore disagree with Plaintiff that RCW 4.96 applies to the District.  Dkt. # 30 at 2.

Defendants' interpretation runs counter to both the text of the applicable statutes and to relevant caselaw.  Chapter 4.96 governs "Actions Against Political Subdivisions, Municipal and Quasi–Municipal Corporations."  RCW 4.96 *et seq.*  RCW 28A.315.005 provides that local school districts comprise "political subdivisions of the state," suggesting that school districts would be covered by Chapter 4.96.  RCW 28A.315.005(2).  Even if the legislature did not intend for these two provisions to be read together in this manner, other terms in the statute support Plaintiff's reading.  RCW 4.96.010 expressly provides that the defined term "local governmental entity" includes municipal corporations and quasi-municipal corporations.  RCW 4.96.010(2).  As one court in this District found, it is "clear" as a matter of state law that "'[s]chool districts . . . are municipal or quasi-municipal corporations" and are therefore subject to the pre-suit notice requirements of RCW 4.96.020.  *Grae-El v. City of Seattle*, No. C21-1678JLR,

ORDER – 10

2022 WL 721489, at \*8 n.8 (quoting *Fed. Way Sch. Dist. No. 210 v. Vinson*, 261 P.3d 145, 150 (Wash. 2011)).  Consistent with that reality, courts regularly apply the pre-suit notification requirements under RCW 4.96.020 to litigation commenced against school districts.  *See, e.g.*, *Wong v. Seattle Sch. Dist. No. 1*, No. C16-1774 RAJ, 2018 WL 1035799, at \*2 (W.D. Wash. Feb. 23, 2018); *Flaherty v. Seattle Pub. Sch. Dist.*, 34 Wash. App. 2d 1011 (2025).

Since they rely on RCW 4.92.100, Defendants offer no arguments for dismissal on the basis that Plaintiff failed to substantially comply with the requirements of RCW 4.96.020.  However, dismissal is still appropriate, as Plaintiff's own Reply makes clear that he did not abide by the requirements of Chapter 4.96.  RCW 4.96.020 imposes several pre-filing requirements upon plaintiffs in tort cases, which include, among other things, the filing of a form that "describes the conduct and circumstances that brought about the injury or damages", describes the injury or damages, and states the amount of damages claimed.  RCW 4.96.020(3)(a)(ii), (iii), (vi).  Here, Plaintiff makes no showing that he presented his claims to the agent of the District by delivery of the standard tort claim form required by RCW 4.96.020 prior to commencing this action.  Accordingly, dismissal of Plaintiff's state law informed consent claims without prejudice is appropriate.  *See, e.g.*, *Carby v. City of Kennewick*, No. 4:25-CV-05106-TOR, 2025 WL 3640388, at \*5 (E.D. Wash. Dec. 16, 2025) (dismissing claims for failure to abide by pre-suit notification requirements under RCW 4.96.020, despite municipal entity defendant's mistaken reliance on RCW 4.92.100 in motion to dismiss).

**D.      Count IV: Violation of Title VII**

Plaintiff's fourth cause of action asserts a Title VII violation on the basis of alleged discrimination and retaliation for engaging in the protected activity of "declining an experimental medical intervention."  Dkt. # 1 ¶ 7.4.

As a threshold matter, Defendants initially asserted in the Motion that Plaintiff failed to exhaust his administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission (EEOC).  Dkt. # 27 at 11.  Plaintiff responded that by he "substantially complied" with exhaustion requirements under Ninth Circuit standards by filing his charge with the Washington State Human Rights Commission, which purportedly maintains a worksharing agreement with the EEOC such that documents filed with one agency are deemed automatically dual-filed.  Dkt. # 29 at 13–14 (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 112–13 (1988); *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008)).  Defendants offer no response to Plaintiff on reply and appear to have ultimately abandoned this exhaustion argument. *See generally* Reply.  Accordingly, the Court does not address it in this order. *See McCarthy v. Amazon.com, Inc.*, No. C23-0263JLR, 2023 WL 5509258, at *2 n.5 (W.D. Wash. Aug. 25, 2023) (citations omitted).

Nevertheless, Plaintiff's Title VII cause of action is subject to dismissal. Plaintiff's claim of retaliation and discrimination is premised on his purported exercise of the "protected . . . right to religious freedom and bodily autonomy" to "declin[e] an experimental medical intervention"—namely, the COVID-19 vaccine.  Dkt.  # 1 ¶ 7.4. But the vaccination requirement was imposed by the District pursuant to the Proclamation, which "easily survives federal constitutional scrutiny." *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2022 WL 1243662, at *4 (E.D. Wash. Apr. 27, 2022).  A policy that is constitutional cannot serve as the basis for a Title VII claim. *Penna v. N. Clackamas Sch. Dist.*, No. 3:22-CV-01417-YY, 2023 WL 6003834, at *2 (D. Or. Aug. 11, 2023), *report and recommendation adopted as modified*, No. 3:22-CV-01417-YY, 2023 WL 6850268 (D. Or. Oct. 17, 2023) (citing *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 579 (9th Cir. 2000)).

Additionally, Plaintiff fails to state facts plausibly giving rise to a claim of discrimination or retaliation on the basis of his sincerely held religious beliefs. Plaintiff does not contest that the District offered and approved Plaintiff's requested religious exemption, but contends that the exemption was not reasonable or genuine, and in fact amounted to "disparate treatment under the guise of accommodation." Dkt. # 29 at 13. Specifically, Plaintiff argues that the District subjected him and other unvaccinated employees to "punitive and stigmatizing conditions" that "singl[ed] out only religious exempt employees," including "invasive testing and segregation." *Id.* Plaintiff's dissatisfaction with these standard workplace safety conditions imposed by the District, however, does not render the District's religious exemption artificial or *de facto* discriminatory. *See Sloan v. Port of Seattle*, No. 2:25-CV-00020-TL, 2025 WL 2799549, at *7 (W.D. Wash. Sept. 30, 2025) ("[Plaintiff's] dissatisfaction with the accommodation that he was provided does not render his working conditions intolerable. . . . In the COVID-19 context, courts have found . . . that workplace safety measures that separate an unvaccinated employee from others at the height of the pandemic do not constitute discriminatory treatment to support a Title VII claim." (collecting cases)). Specifically, as numerous courts in this Circuit have concluded, to the extent that Plaintiff argues that he was "subject to discriminatory treatment because he was required to wear a mask, distance himself from others . . . and test for COVID-19, these policies do not support a Title VII violation." *Penna*, 2023 WL 6003834, at *2 (citing *Breshears v. Oregon Dep't of Transportation*, No. 2:22-CV-01015-SB, 2023 WL 136550, at *3 (D. Or. Jan. 9, 2023); *Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023); *Schmidt v. City of Pasadena*, 2023 WL 4291440, at *8 (same for testing requirements). Accordingly, Plaintiff's Title VII claims are dismissed without prejudice.

ORDER – 13

**E.      Count V: Violation of Free Exercise Clause**

Finally, Plaintiff's fifth cause of action alleges a violation of the Free Exercise Clause of the First Amendment.  Dkt. # 1 ¶ 7.5.  Plaintiff alleges that the District's "demand that Plaintiff submit to coerced injection of experimental gene therapies lacked a compelling interest and burdened Plaintiff's free exercise of religion."  *Id.* ¶ 7.5(c).  Plaintiff continues: "By punishing and threatening to punish Plaintiff for exercising his sincerely held religious beliefs regarding injecting his body with experimental gene therapies," the District violated the Free Exercise Clause of the First Amendment.  *Id.* ¶ 7.5(k).  Plaintiff therefore identifies, as purportedly violative of the Free Exercise Clause, the District's policy of requiring employees to receive the COVID-19 vaccine or abide by alternative safety measures including twice-weekly testing.  *See id.* ¶ 7.5; Dkt. # 29 at 14–18.  Plaintiff appears to raise both facial and an as-applied Free Exercise challenges to the District's policy; the Court will consider each challenge in turn.

Plaintiff's facial challenge to the District's policy is easily dealt with.  As previously discussed, the District's policy is based on Proclamation 21-14.1, which "easily survives federal constitutional scrutiny."  *Wise*, No. 2022 WL 1243662, at *4.  Indeed, the Ninth Circuit has already concluded that the Proclamation "does not facially violate the Free Exercise Clause," as it is facially neutral and generally applicable, and survives rational basis review.  *Bacon v. Woodward*, No. 22-35611, 2024 WL 3041850, at *1 (9th Cir. June 18, 2024) (internal citations omitted).  While the Court in *Bacon* focused principally on the Proclamation's compulsory vaccine requirement, Proclamation 21-14.1 also includes language indicating that "operators of Educational Settings" must "require an individual who receives an accommodation to take COVID-19 safety measures that are consistent with the recommendations of the state Department of Health for the setting in which the individual works."  Proclamation by Governor Jay Inslee,    No.    21-14.1,    at    6    (Wash.    Aug.    20,    2021),    available    at

ORDER – 14

https://governor.wa.gov/sites/default/files/proclamations/21-14.1%20-%20COVID-19%20Vax%20Washington%20Amendment.pdf.   Plaintiff's facial Free Exercise challenge to the District's vaccination and safety mitigation policies therefore fail.

The Court next turns to Plaintiff's as-applied Free Exercise challenge to the District's policy. A facially neutral and generally applicable policy can still be subject to strict scrutiny if it is not implemented in a neutral and generally applicable manner. *Sloan v. Port of Seattle*, 2025 WL 2799549, at \*12. Beginning with neutrality, "[a] government policy will not qualify as neutral if it is specifically directed at religious practice." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (citations omitted). A policy will similarly fail the general applicability requirement if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, or if it provides a mechanism for individualized exemptions." *Id.* (internal citations and quotation marks omitted).

Plaintiff contends that the District's policy was "not neutral or generally applicable" because it imposed testing requirements on unvaccinated employees only, "the vast majority of whom sought exemptions on religious grounds." Dkt. # 29 at 17. Accordingly, the District allegedly "creat[ed] two separate categories of employees and burden[ed] only the religiously exempt group." *Id.* While Plaintiff may be correct that the District's policy had the incidental effect of burdening a religious group, this is insufficient to merit strict scrutiny.

Here, the Proclamation (and, by extension, the District's policy) is neutral as applied to Plaintiff. The vaccine mandate and safety conditions for unvaccinated employees are not "specifically directed at religious practice." *Kennedy*, 597 U.S. at 526. With respect to "operational neutrality", Plaintiff provides no evidence that "the religion of an employee (or that an employee has a religious exemption) influenced the

ORDER – 15

[District's] accommodation decisions." *Rosa v. City of Issaquah in & for Washington*, No. 2:24-CV-01673-TL, 2025 WL 2733672, at \*24 (W.D. Wash. Sept. 25, 2025). For example, Plaintiff does not allege that employees who obtained disability accommodations "were treated favorably, *e.g.*, did not have to submit to [bi-]weekly COVID-19 testing, as compared to employees who obtained an exemption on religious grounds." *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, 2022 WL 16722357, at \*16 (S.D. Cal. Nov. 4, 2022). In fact, the record here indicates that the basis for the District's regulation of Plaintiff's conduct was not his sincerely held religious beliefs but his total disregard for the need to participate in at least *some* COVID-19 mitigation strategies in order to safely work in an educational setting during a global pandemic. This is underscored by the District's termination recommendation letter, which provides that—just weeks after receiving his religious exemption and being informed of the possibility of additional required safety mitigation strategies—Plaintiff came to work while "symptomatic and COVID positive," which Plaintiff does not appear to dispute. Dkt. # 26 at 10, 19–20. The District thus concluded that Plaintiff's subsequent refusal to abide by its testing and masking policies—which applied to *all* unvaccinated employees—illustrated an "ongoing pattern of disregard for staff and student safety" justifying Plaintiff's termination. Dkt. # 26 at 19.

Similarly, Plaintiff fails to allege that the District "permitt[ed] secular conduct that undermines the government's asserted interests in a similar way, or . . . provide[d] a mechanism for individualized exemptions." *Kennedy*, 597 U.S. at 526 (internal citations and quotation marks omitted). By way of contrast, Ninth Circuit permitted an as-applied Free Exercise claim pled by unvaccinated firefighters to proceed after the plaintiffs' employer fire department declined to grant their religious exemptions, but subsequently hired unvaccinated firefighters from neighboring districts with existing exemptions to fill

ORDER – 16

the terminated employees' roles. *Bacon v.* Woodward, 104 F.4th 744, 751 (9th Cir. 2024). Here, Plaintiff presents no similar evidence that the District ever treated religious unvaccinated employees from non-religious unvaccinated employees. Accordingly, the Court concludes that the District's policy was generally applicable as applied to Plaintiff.

Because the District's policy was both facially neutral and generally applicable, "the incidental burden it imposed on Plaintiff's religious exercise is subject to rational basis review." *Rosa*, 2025 WL 2733672, at *26 (citing *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015)). As previously discussed, the District's policy easily satisfies rational basis review. Accordingly, Plaintiff's free exercise claim is dismissed without prejudice.

## V.    CONCLUSION

For all the foregoing reasons, the Court **GRANTS** the Motion and **DISMISSES** this case. Dkt. # 27. Although amendment is likely to be futile based on the facts underlying Plaintiff's complaint, the Court grants leave to amend and its dismissal is **WITHOUT PREJUDICE**.

Dated this 11th day of February, 2026.

*Richard A Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 17